**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOHN DARNELL,

                  Plaintiff,

vs.                                     Case No.  3:05-cv-878-J-MMH

MICHAEL J. ASTRUE[1],
Commissioner of Social Security,

                  Defendant.

_____/

## OPINION AND ORDER[2]

      **THIS CAUSE** is before the Court on Plaintiff's Complaint (Dkt. No. 1; Complaint)

seeking review of the final decision of the Commissioner of Social Security (Commissioner)

denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI) under the Social Security Act.  Administrative remedies have been exhausted,

and the case is properly before the Court.

---

    [1]    Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  <u>See</u> Order of Reference (Dkt. No. 6).

## I.     Background

At the time of the administrative hearing, Plaintiff was forty-three years old and living

in a mobile home with his wife, son, father-in-law, and mother-in-law.  <u>See</u> Tr. at 170, 363.[3]

He completed the eighth grade but had no further training or education.  <u>Id.</u> at 364.  Plaintiff

previously worked as a laborer, maintenance helper, yardman, truck driver, painter, forklift

operator, poultry worker, and machinist/factory worker.[4]  <u>Id.</u> at 16, 179, 364-70.

Plaintiff filed applications for DIB and SSI on August 14, 2001, <u>see id.</u> at 15, 122-24,

alleging a disability onset date of August 1, 2000, <u>see id.</u> at 16, 122.  In his disability report,

Plaintiff asserted that he is unable to work because he suffers from "severe muscle spasms"

and "severe anxiety attacks."  <u>Id.</u> at 188.  Plaintiff indicated that he was unable to lift, sit, or

walk without experiencing muscle spasms.  <u>Id.</u>  He further indicated that, during his anxiety

attacks, he sweats and vomits.  <u>Id.</u>

After the applications were denied initially, <u>see id.</u> at 25, 85,[5] and on reconsideration,

<u>see id.</u> at 23, 77, Administrative Law Judge (ALJ) JoAnn L. Anderson conducted a hearing

on October 3, 2004, <u>see id.</u> at 14, 357.  Plaintiff, who was represented by counsel, testified

at the hearing as did a vocational expert (VE), David Pigue.  <u>See id.</u> at 358.  On March 15,

---

[3]     The Transcript of Administrative Proceedings (Tr.) was filed on December 13, 2005, as an appendix to Defendant's Answer (Dkt. Nos. 3, 5).

[4]     After listening to Plaintiff's testimony regarding these positions, the vocational expert testified that Plaintiff's past relevant work consisted of the following jobs: (1) machinist/automotive; (2) calibrator; (3) poultry hanger; (4) forklift operator/industrial truck operator; (5) tractor trailer/truck driver; (6) painter/spray II; (7) hand packager; and (8) material handler.  Tr. at 386-88.

[5]     The "List of Exhibits" contained in the Transcript of Administrative Proceedings indicates that the exhibits relating to Plaintiff's request for SSI are "not available for inclusion."  <u>See</u> Tr. at 3.

2005, the ALJ denied Plaintiff's applications, finding that he was not disabled because he could perform his past relevant work as a forklift operator, hand packager, and poultry hanger. Id. at 20. The Appeals Council denied Plaintiff's request for review on July 20, 2005. Id. at 5-6. Consequently, the Commissioner's decision became final. See Sims v. Apfel, 530 U.S. 103, 106-07, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000). Plaintiff timely filed the Complaint on September 15, 2005. Complaint at 1.

## II.    Standard of Review

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[6] See 20 C.F.R. §§ 404.1520(a),

---

[6]    The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.

Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

416.920(a). While the claimant generally bears the burden to prove that he or she is disabled, see 20 C.F.R. §§ 404.1512(a), 416.912(a), the burden shifts to the Commissioner at step five to show that the claimant can perform other work in the national economy. See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). It is well established, however, that review is limited to "whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam). It does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); see also Dyer, 395 F.3d at 1210; Foote, 67 F.3d at 1560.

The Commissioner's factual findings must be affirmed if they are supported by substantial evidence, "even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision." Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002), aff'd, No. 02-16464, 2003 WL 21283493 (11th Cir. May 22, 2003) (unpublished table decision); see also Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004); Ellison, 355 F.3d at 1275; cf. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) ("An ALJ's decision will be reversed only if the decision is not supported by substantial evidence."). Substantial evidence has been defined as "such

relevant evidence as a reasonable person would accept as adequate to support a conclusion." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge, 150 F.3d at 1322); see also Ellison, 355 F.3d at 1275; Foote, 67 F.3d at 1560.  It is more than a scintilla but less than a preponderance of evidence.  See Dyer, 395 F.3d at 1210; Ellison, 355 F.3d at 1275.  In determining whether substantial evidence supports a finding, portions of the transcript may not be viewed in isolation, but rather must be examined as part of the record as a whole.  See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Foote, 67 F.3d at 1560.

On the other hand, no deference is accorded to the Commissioner's application of legal standards.  See Moore, 405 F.3d at 1211; Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  The application of legal standards is closely scrutinized.  See Doughty, 245 F.3d at 1278.  Indeed, where the Commissioner has used incorrect legal standards or failed to explain her decision adequately and the reviewing court is unable to determine whether the correct law has been applied, then the court will reverse the decision.  See Johnson, 268 F. Supp. 2d at 1321; see also Foote, 67 F.3d at 1558.

### III.    Summary of Argument

Plaintiff raises two issues on appeal.  See Plaintiff's Brief (Dkt. No. 12; Brief) at 1, 9-19.  Plaintiff asserts that the ALJ erred by failing to discuss or consider how his muscle spasms effected his ability to work.  Id. at 9-15.  He also contends that the ALJ erred by (1) rejecting the opinion of Dr. Raymond P. Shoenrock, a consultative physician, and

(2) failing to specify the weight she afforded to the opinions of other mental health professionals.  Id. at 15-19.

    **IV.**    **Discussion**

        **A.**    **Failure to Discuss or Consider Limitations Resulting From Plaintiff's Muscle Spasms**

Plaintiff first argues that this case should be remanded because the ALJ failed to either discuss or consider whether Plaintiff's chronic muscle spasms interfered with his ability to perform the physical requirements of work.  See Brief at 9-15.  Plaintiff asserts that, because he reported that he suffered from chronic muscle spasms and presented evidence demonstrating that he was diagnosed with and received medical treatment for this impairment, the ALJ should have discussed the following: (1) whether Plaintiff's muscle spasms constituted a severe impairment; (2) whether she found Plaintiff's allegations regarding his muscle spasms credible; and (3) whether Plaintiff's muscle spasms interfered with his ability to work.  Id. at 9, 13.  He further asserts that, even if his muscle spasms decreased in severity by the time of the hearing, "the ALJ still should have analyzed his residual functional capacity for at least a closed period", and, in any event, a review of his testimony demonstrates that he still suffered from muscle spasms at the time of the hearing. Id. at 13.  Finally, Plaintiff contends that, because this Court, in reviewing an ALJ's decision, is limited to evaluating the reasons set forth by the ALJ in support of her decision, it must reject any "post hoc rationalizations" offered by the Commissioner as to why the ALJ failed to analyze the impact Plaintiff's muscle spasms had on his ability to work.  Id. at 13-14.

The analysis set forth in the Code of Federal Regulations requires the ALJ to determine whether the claimant suffers from a severe impairment at Step Two of the sequential inquiry. 20 C.F.R. §§ 404.1520(c), 416.920(c). "A severe impairment is one that is more than 'a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.'" Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam) (quoting 20 C.F.R. § 416.924(c)). However, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

An ALJ must "consider each impairment alleged . . . and the combined effect of those impairments." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986); see also East v. Barnhart, 197 Fed. Appx. 899, 902 (11th Cir. 2006). In determining whether a claimant's impairment or impairments are severe, the ALJ must determine whether medical evidence establishes an impairment or combination of impairments of such severity as to be the basis of a finding of inability to engage in any substantial gainful activity. See Social Security Ruling (SSR) 85-28. The standard to be utilized in determining whether a particular impairment is "severe" has been defined as follows: "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal affect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Bridges, 815 F.2d at 625 (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)).

In the instant case, the ALJ found that Plaintiff's anxiety disorder and depression constituted severe impairments. See Tr. at 17. While the ALJ noted that the record

indicated that Plaintiff received treatment for muscle spasms and that Plaintiff had reported to a consultative examiner that he was suffering from chronic muscle spasms, the ALJ did not discuss whether Plaintiff's muscle spasms constituted a severe impairment or evaluate the impact Plaintiff's muscle spasms had on his ability to work. See id. at 15-22. Given Plaintiff's assertion, in his disability report, that he is unable to work because he suffers from "severe muscle spasms", see Tr. at 188, the ALJ was required to discuss whether Plaintiff's muscle spasms were sufficiently severe, either singularly or in combination with his other impairments, to constitute a disability, see Gibson, 779 F.2d at 623.

Notably, the Commissioner argues that the ALJ was not required to consider Plaintiff's muscle spasms given Plaintiff's testimony, at the hearing, that he did not suffer from any physical problems that prevented him from working. See Memorandum in Support of the Commissioner's Decision (Dkt. No. 13, Memorandum) at 7-8; Tr. at 378. The Court, however, is unpersuaded by this argument. Plaintiff listed his muscle spasms as an impairment that limited his ability to work in both his Disability Report and Reconsideration Disability Report. See Tr. at 154, 188. In another form that he completed for the Social Security Administration on February 11, 2002, Plaintiff asserted that his muscle spasms prevented him from doing any type of cooking or housework and that even the simple act of tying his shoe caused him to experience muscle spasms. Id. at 151-53. Plaintiff also submitted numerous medical records in which physicians referenced Plaintiff's muscle spasms and/or the treatment being provided to Plaintiff for this condition. See id. at 206, 214-17, 223, 226, 228, 269, 273. Although Plaintiff testified that he did not suffer from any physical problems that prevented him from working, he, nevertheless, testified that he was

still experiencing muscle spasms on a regular basis at the time of the hearing.  See id. at 376-78.  Given the repeated references in the record to Plaintiff's muscle spasms, the Court declines to find that the ALJ was not required to address this condition.  Indeed, this is not a case where the ALJ had to "scour the medical record" in order to find this impairment.  See East, 197 Fed. Appx. at 902 (holding that an ALJ did not err by not considering a claimant's borderline personality disorder given the claimant's failure to list her borderline disability disorder as an impairment or submit evidence regarding the effect this condition had on her ability to work).  Thus, on remand, the ALJ should explicitly address whether Plaintiff's muscle spasms were sufficiently severe, either singularly or in combination with his other impairments, to create a disability.[7]  See Gibson, 779 F.2d at 623; SSR 85-28.

### B.    Evaluation of Medical Opinions

Plaintiff next argues that the ALJ erred by rejecting Dr. Schoenrock's opinion that, based on Plaintiff's self-reports of his symptoms, he suffers from marked limitations in his social functioning.  Brief at 15.  Plaintiff notes that the ALJ rejected Dr. Schoenrock's opinion because it was based on Plaintiff's self-reports and due to Dr. Schoenrock's suggestion that Plaintiff's test results may be invalid.  Id. at 16.  However, Plaintiff asserts that Dr. Schoenrock's "speculation" regarding Plaintiff's test results appears to be based on his mistaken assumption that Plaintiff had a limited history of psychiatric treatment.  Id. at 16-17;

---

[7]    While not required to do so, given the apparent conflict between Plaintiff's recent testimony and the statements that he previously made to the Commissioner regarding the frequency of his muscle spasms, see Tr. at 151, 376, the ALJ may wish to consider whether she needs to further develop the record regarding the impact Plaintiff's muscle spasms currently have on his ability to work, see Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (stating that "[an] ALJ [also] has a basic obligation to develop a full and fair record.").

see also Tr. at 348.  Plaintiff further argues that the ALJ erred by failing to discuss the opinions of the mental health care providers at Behavioral Health Center (Meridian) and that of Dr. Umesh M. Mhatre, a consultative examiner.  Brief at 15, 17-19.  Additionally, Plaintiff asserts that the ALJ erred by failing to state the weight that she provided to these opinions. Id.

In regard to the ALJ's discussion of the medial records from Meridian, Plaintiff notes that the ALJ failed to discuss the opinions of the mental health care providers who assigned Plaintiff a Global Assessment of Functioning (GAF) score of 40.[8]  Id. at 17.  Although Plaintiff concedes that the mental health care providers at Meridian were not licensed psychologists or acceptable medical sources, he contends that the ALJ was, nevertheless, required to consider their opinions as "other evidence" and to state the weight he accorded to this evidence.   Id. at 17-18.  Plaintiff also asserts that the ALJ failed to discuss Dr. Mhatre's evaluation that Plaintiff had a GAF score of 50[9] and did not explain her basis for rejecting Dr. Mhatre's diagnosis that Plaintiff had poor concentration and a mild degree of psychomotor retardation.   Id. at 18-19.   The Court will address the error alleged in relation to Dr.

---

[8]     The GAF scale ranges from one hundred (superior functioning) to one (persistent danger of severely hurting self or others, or unable to care for himself).  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 34 (4th ed., text rev. 2000).  A score between thirty-one and forty is defined as "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work . . .)."

[9]     A GAF score between forty-one and fifty is defined as "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Ass'n, supra note 7, at 34.

Shoenrock before returning to the ALJ's treatment of the opinions of the Meridian mental health care providers and Dr. Mhatre.

### 1. Dr. Shoenrock

On May 8, 2004, Dr. Schoenrock conducted a psychological evaluation of Plaintiff which included the administration of the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") personality test. See Tr. at 347-49. Dr. Schoenrock diagnosed Plaintiff with "mood disorder not otherwise specified", "panic disorder with agoraphobia", and "alcohol abuse, in early partial remission." Id. at 349. Dr. Shoenrock also indicated that Plaintiff was a malingerer. Id. Specifically, Dr. Shoenrock noted that, although Plaintiff demonstrated "bona fide symptoms suggestive of the presence of anxiety and depression," his receipt, during the administration of an MMPI-2, of "a rather unusually high score on the F scale and a very low score on the K scale," suggested that Plaintiff "may have made some attempts to exaggerate the seriousness of any psychological or emotional problems which may be present in order to create the impression of a severe psychological disorder." Id. at 348-49. Dr. Schoenrock noted that, "[i]f one were to give him the benefit of the doubt and accept this profile, the profile would portray him as an individual whose psychological defenses may be extremely weak and who may have limited ability to cope with stress." Id. at 348. Dr. Schoenrock, however, stated that Plaintiff's treatment history was not consistent with this profile "given the absence of any treatment aside from a few visits to Meridian Behavioral Healthcare." Id. In regard to Plaintiff's ability to perform work-related mental activities, Dr. Shoenrock found that Plaintiff had adequate capacity in the areas of understanding and memory. Id. at 349. However, he further found that, if Plaintiff's reports of his symptoms

were credible, then he was likely impaired in his ability for sustained concentration and persistence, social interaction, and adaptation.  Id.

That same day, Dr. Schoenrock also completed a Medical Source Statement of Ability to Do Work-Related Activities ("Medical Source Statement").  Id. at 350-52.  In the Medical Source Statement, Dr. Schoenrock indicated that, based on Plaintiff's self reports, he had marked limitations in his ability to interact appropriately with the public, supervisors, and co-workers.  Id. at 351.  Dr. Schoenrock also opined that Plaintiff had slight limitations in his ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting.  Id.

In her decision, the ALJ found that Plaintiff had "mild restriction of activities of daily living and moderate limitations of social functioning and concentration."  Id. at 17.  The ALJ noted that, although Plaintiff's attorney argued that little weight should be given to Dr. Schoenrock's psychological evaluation report, she, nevertheless, relied on the finding in Dr. Schoenrock's Medical Source Statement that Plaintiff suffered from marked limitations to support her assertion that Plaintiff is disabled.  Id. at 20.  The ALJ, however, stated that she was giving little weight to Dr. Schoenrock's finding of marked limitations because they were based on Plaintiff's self-reports of disabling limitations.[10]  Id.  The ALJ also noted that the MMPI-2 administered by Dr. Schoenrock suggested that Plaintiff may have exaggerated his symptoms.  Id.  Finally, the ALJ stated that "if the medical report of Dr. Schoenrock is given

---

[10]      In her decision, the ALJ also found that Plaintiff's allegations of disabling impairments were not fully credible because they were inconsistent with the "evidence as a whole" in the record.  See Tr. at 20.

little weight as argued by the claimant's representative, the same argument can be made with respect to the Medical Source Statement." Id.

Dr. Schoenrock is not a treating physician, and, therefore, his opinions are not entitled to controlling weight. See 20 C.F.R. § 404.1527(d)(1)-(2); see also Johnson, 268 F. Supp. 2d at 1323. Indeed, opinions of consultative or examining physicians are not entitled to any deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam); Burroughs v. Massanari, 156 F. Supp. 2d 1350, 1365 (N.D. Ga. 2001).

The undersigned finds substantial evidence in the record supports the ALJ's decision to give little weight to Dr. Schoenrock's opinion that Plaintiff had marked limitations in his ability to interact appropriately with the public, his supervisors, and co-workers. As noted above, in his Medical Source Statement, Dr. Schoenrock found, "[b]ased on [Plaintiff's] self-reports", Plaintiff suffered from marked limitations in his ability to interact appropriately with the public, his supervisors, and co-workers. Tr. at 351. However, in the psychological evaluation report, Dr. Schoenrock diagnosed Plaintiff as a malingerer, noting that the scores that Plaintiff received from the MMPI-2 test suggested that Plaintiff attempted to "exaggerate the seriousness of any psychological or emotional problems which may be present in order to create the impression of a severe psychological disorder." Id. at 348. Thus, as Dr. Schoenrock questioned the accuracy of Plaintiff's self-reports but then used these same self-reports as his basis for finding that Plaintiff suffered from marked limitations in social functioning, the undersigned declines to find that the ALJ erred by giving little weight to the opinions given by Dr. Schoenrock in the Medical Source Statement.

Notably, Plaintiff asserts that the ALJ erred by relying on Dr. Schoenrock's statement regarding Plaintiff's test results as a basis for rejecting Dr. Schoenrock's opinion that Plaintiff suffered from marked social functioning limitations, arguing that Dr. Schoenrock's "speculation" that Plaintiff's test results may be invalid appeared to be based on his mistaken assumption that Plaintiff had not received psychiatric treatment other than "a few visits to Meridian Behavioral Healthcare."   Brief at 16.   However, the undersigned finds that this argument is without merit.  Indeed, in the psychological evaluation report, Dr. Schoenrock stated that it was the combination of scores that Plaintiff received on the MMPI-2 personality test that led him to conclude that Plaintiff may have been attempting to exaggerate the seriousness of his psychological or emotional problems.  See Tr. at 348. Although Dr. Schoenrock also indicated that the personality profile that resulted from Plaintiff's test scores was inconsistent with Plaintiff's limited treatment history, a review of the psychological evaluation report, nevertheless, demonstrates that Dr. Schoenrock primarily relied on the combination of test scores that Plaintiff received on the MMPI-2 personality test in finding that Plaintiff was a malingerer.  Id. at 348.[11]   Accordingly, the undersigned finds that substantial evidence supports the ALJ's determination that Dr. Shoenrock's opinion that Plaintiff suffered from marked limitations in his social functioning was entitled to little weight.

---

[11]     Because the undersigned finds that a review of the record demonstrates that Dr. Schoenrock primarily based his finding that Plaintiff was a malingerer on the combination of test scores that Plaintiff received on the MMPI-2 personality test, the undersigned declines to address whether Dr. Schoenrock accurately characterized Plaintiff's treatment history.

## 2.     The Mental Health Care Providers at Meridian and Dr. Mhatre

The Court will first address the error alleged in relation to Dr. Mhatre.  Dr. Mhatre

performed a psychiatric evaluation of Plaintiff on June 6, 2002.  See id. at 270-73.  Dr.

Mhatre diagnosed Plaintiff with major depression and chronic alcohol abuse and assigned

Plaintiff a GAF score of 50.  Id. at 272-73.  Although Dr. Mhatre found that Plaintiff

demonstrated "a mild degree of psychomotor retardation with poor concentration," he noted

that Plaintiff's "cognitive functions of orientation and memory were intact." Id. at 273.  The

ALJ noted Dr. Mhatre's diagnosis that Plaintiff suffered from depression and chronic alcohol

abuse.  Id. at 18.  The ALJ further acknowledged Dr. Mhatre's observation that, although

Plaintiff demonstrated a mild degree of psychomotor retardation with poor concentration, his

cognitive functions of orientation and memory were intact.  Id.  The ALJ, however, did not

note or discuss the GAF score of 50 assigned by Dr. Mhatre.  See id. 15-22.

As noted above, Plaintiff argues that the ALJ erred by failing to state the weight that

she provided to the opinion of Dr. Mhatre.  Brief at 15.  She also contends that the ALJ erred

by failing to discuss Dr. Mhatre's conclusion that Plaintiff had a GAF score of 50 and by not

explaining her basis for rejecting Dr. Mhatre's diagnosis that Plaintiff had poor concentration

and a mild degree of psychomotor retardation.  Id. at 18-19.

The ALJ did not explicitly state the weight that she afforded to the opinions expressed

by Dr. Mhatre or discuss Dr. Mhatre's assessment that Plaintiff had a GAF score of 50.  See

Tr. at 15-22.  Moreover, based on a review of the ALJ's decision, it appears that the ALJ

either ignored the GAF score assessed by Dr. Mhatre or did not give much weight to this

opinion.  Notably, while a GAF score of 50 is indicative of major or serious impairments, see

American Psychiatric Ass'n, <u>supra</u> note 7, at 34, the ALJ found that Plaintiff only suffered from mild restriction of activities of daily living and moderate limitations of social functioning and concentration, <u>see</u> Tr. at 17.

It is not clearly established in the Eleventh Circuit that an ALJ is required to state the weight he or she affords to the opinions given by consultative examiners.  <u>See</u> <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986); <u>Wind v. Barnhart</u>, 133 Fed. Appx. 684, 692 (11th Cir. 2005) (per curiam).  <u>But see</u> <u>Sharfarz v. Brown</u>, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  While the <u>Sharfarz</u> decision states generally that "[i]n assessing the medical evidence in this case (which included opinions from both treating and examining physicians), the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor," 825 F.2d at 279, it cites <u>MacGregor</u> for this proposition. <u>See</u> <u>Sharfarz</u>, 825 F.2d at 279.  The Eleventh Circuit in <u>MacGregor</u> merely found that the ALJ must state the weight afforded to treating physicians' opinions and provide an explanation for his or her decision.  <u>See</u> 786 F.2d at 1053.  This statement in <u>MacGregor</u> is settled law in this Circuit.  <u>See, e.g.</u> <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam).

However, there is a distinction between treating physicians' opinions and the opinions of consultative or examining physicians and "other medical sources."  A treating physician's opinion is entitled to controlling weight unless there is good cause to discount it.  <u>See</u> <u>MacGregor</u>, 786 F.2d at 1053; <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Therefore, the ALJ must set forth explicit reasons for discounting a treating physician's opinion in order to ensure that the ALJ afforded the opinion proper weight.  <u>See</u> <u>Burroughs</u>,

156 F. Supp. 2d at 1365.  On the other hand, an opinion provided by either a consultative or examining physician is not entitled to any deference.  See McSwain, 814 F.2d at 619; Burroughs, 156 F. Supp. 2d at 1365.  Thus, the justification for requiring a statement of reasons cannot be applied to these opinions.  Consequently, it is not settled whether the ALJ's mere failure to state the weight afforded to a consultative examiner's opinion warrants remand.

Nevertheless, the Eleventh Circuit has repeatedly stated that the ALJ "should state the weight he [or she] accords to each item of impairment evidence and the reasons for his [or her] decision to accept or reject that evidence."  Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990); see also Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); Gibson, 779 F.2d at 623.  In Cowart, the court recognized that "[u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  662 F.2d at 735 (internal quotation marks omitted).  Similarly, the Seventh Circuit opined that "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review."  Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984).  The Third Circuit has held that the case should be remanded when the ALJ fails to discuss significant, probative evidence and, as a result, the court is unable to

discern whether the ALJ merely rejected the evidence or ignored it altogether. <u>See, e.g.</u>, <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3rd Cir. 2001).

The undersigned finds that the medical opinion provided by Dr. Mhatre constitutes significant, probative evidence. As noted above, a GAF score of 50 is indicative of major or serious impairments that greatly affect an individual's ability to work. <u>See</u> American Psychiatric Ass'n, <u>supra</u> note 7, at 34. Moreover, the Court notes that in <u>McCloud v. Barnhart</u>, 166 Fed. Appx. 410, 418 (11th Cir. 2006), the Eleventh Circuit held that an ALJ erred by failing to consider a GAF score of 48 that was assessed by an examining physician when determining whether a claimant was disabled and directed the ALJ to consider, on remand, what, if any, weight should be accorded to the GAF score. In addition, as it is unclear whether the ALJ merely rejected the GAF score of 50 provided by Dr. Mhatre or simply ignored it, the undersigned is unable to say that the ALJ's decision is supported by substantial evidence. <u>See</u> <u>Cowart</u>, 662 F.2d at 735. As this case is being remanded on other grounds, the ALJ is directed to reconsider the opinion provided by Dr. Mhatre, state the weight that she is affording to this opinion, and explain her reasons for accepting or rejecting this opinion. <u>See</u> <u>Lucas</u>, 918 F.2d at 1574; <u>McCloud</u>, 166 Fed. Appx. at 418.

### 3. The Mental Health Care Providers at Meridian

Lastly, the Court will address the error alleged with respect to the opinions of the Meridian mental health care providers. A review of the record indicates that, from November 26, 2002 to January 4, 2003, Plaintiff received treatment at Meridian for anxiety, panic disorder with agoraphobia, and alcohol abuse. <u>See</u> Tr. at 311-43. In an Intake and

Screening Evaluation that was completed on November 19, 2002, Shannon Willis[12] observed that Plaintiff displayed an unkempt appearance and was overweight. Id. at 326. She further noted that Plaintiff "had difficulty maintaining eye contact", was fidgeting, and reported experiencing nervousness and anxiety as a result of being in a social environment. Id. at 327. While Ms. Willis indicated that Plaintiff was "very friendly", she also noted that Plaintiff appeared overwhelmed and had a "flattened affect". Id. Ms. Willis concluded that Plaintiff's inability to complete memory tasks indicated that he suffered from some impairment in immediate memory development. Id. at 328. Finally, she indicated that Plaintiff had a current GAF score of 40 and a high GAF score of 60 during the past year.[13] Id. at 335.

On November 26, 2002, Michael Speisman, ARNP, performed a psychological evaluation of Plaintiff. Id. at 322-25. Nurse Speisman found that Plaintiff was suffering from a major depressive disorder, anxiety, poor self-esteem and short term memory, gastric distress, and low energy. Id. at 325. Nurse Speisman also reported that Plaintiff thought that people, including his family, were plotting against him. Id. In her decision, the ALJ merely stated, with respect to Plaintiff's treatment at Meridian, that Plaintiff "was seen at [this facility] from November 26, 2002 through January 4, 2003 for alcohol abuse, and panic disorder with agoraphobia." Id. at 18. As noted above, Plaintiff argues that ALJ erred by

_____

[12]     Although the record is not entirely clear, it appears that Ms. Willis was a mental health counselor at Meridian. See generally at 326-35, 338-39. In any event, Plaintiff concedes that Ms. Willis is not an acceptable medical source. See Brief at 17.

[13]  A GAF score between fifty-one and sixty is defined as "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, supra note 7, at 34.

failing to consider the opinions provided by the mental health professionals at Meridian, particularly Ms. Willis' assessment of a GAF score of 40.  Brief at 17-18.

Plaintiff concedes that the mental health providers who treated him at Meridian are not licensed psychologists or acceptable medical sources.  See id. at 17.  The Regulations[14] define an acceptable medical source as "one of the sources described in § 404.1513(a) who provides evidence about [the claimant's] impairments."  20 C.F.R. §§ 404.1502; see also 20 C.F.R. §416.902.   The Regulations list the following professionals as falling within the description of acceptable medical source:  (1) licensed physicians; (2) licensed or certified psychologists; (3) licensed optometrist; (4) licensed podiatrists; and (5) qualified speech-language pathologists.  See 20 C.F.R. 404.1513(a), 416.913(a).  The Regulations further provide that "[i]n addition to evidence from the acceptable medical sources . . . , [the Commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [his or her] ability to work."   20 C.F.R. §§ 404.1513(d), 416.913(d) (emphasis added).  The Regulations specifically list therapists and nurse practitioners as "other [medical] sources" whose impairment evidence may be considered by the Commissioner.  See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  Based on a plain reading of 20 C.F.R. §§ 404.1513 and 416.913, it appears that the ALJ was not required to use evidence from the mental health professionals at Meridian to demonstrate the severity of Plaintiff's impairments or how Plaintiff's impairments affect his ability to work.

Moreover, while an ALJ must evaluate all "medical opinions", see 20 C.F.R. §§

---

[14]      The Regulations are found in 20 C.F.R. Parts 404 & 406.

404.1527(d); 416.927(d) ("Regardless of its source, we will evaluate every medial opinion we receive"), only physicians, psychologists, or other acceptable medial sources can give "medical opinions," <u>see</u> 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); SSR 06-03p. As the mental health professionals at Meridian were not acceptable medical sources, the ALJ was not required to evaluate the opinions provided by these individuals.   Accordingly, the undersigned declines to find that the ALJ erred by failing to specifically evaluate the opinions provided by the mental health professionals at Meridian.

## V.    Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to:   (1) address whether Plaintiff's muscle spasms were sufficiently severe, either singularly or in combination with his other impairments, to create a disability, and consider whether the record needs to be further developed regarding the impact Plaintiff's muscle spasms currently have on his ability to work; (2) reconsider the opinion provided by Dr. Mhatre, state the weight afforded to this

opinion, and explain the reasoning behind accepting or rejecting this opinion; and

(3) conduct any other proceedings deemed appropriate.

　　　　**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of February, 2007.

**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc3

Copies to:

Counsel of Record